## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

_____

| | |
|---|---|
| SAVASENIORCARE, LLC, ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | **NO.** |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **ZURICH AMERICAN INSURANCE** ) | |
| **COMPANY and BEAZLEY INSURANCE** ) | |
| **COMPANY, INC.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## COMPLAINT

Plaintiff SavaSeniorCare, LLC ("Sava"), by and through its attorneys King & Spalding LLP, and as and for its Complaint against Defendants Zurich American Insurance Company ("Zurich") and Beazley Insurance Company, Inc. ("Beazley") (together, "Insurers"), hereby alleges upon knowledge to itself and based on information and belief as follows:

## PRELIMINARY STATEMENT

1.     This action arises from the refusal of Sava's Insurers to honor their promises to reimburse Sava for more than $20 million in Losses it incurred in connection with the defense of the lawsuit styled _Schron v. Grunstein_, No. 650702/2010 (N.Y. Sup. Ct.) ("the Schron Action"). Sava and two of its former directors and managers, Leonard Grunstein and Murray Forman ("Grunstein and Forman"), were among the defendants named in the Schron Action.

2.     The Insurers are large insurance companies that promised to provide Sava with $25 million in private company directors and officers ("D&O") insurance coverage to protect

Sava against, among other things, Defense Costs arising from lawsuits, such as the Schron Action, brought against Sava and its officers, directors, and managers for actual or alleged Wrongful Acts.[1]

3.     The Plaintiffs in the Schron Action generally alleged that Sava, Grunstein, Forman, and other entities engaged in various forms of misconduct that injured real estate investor Rubin Schron, as well as various other entities controlled by Mr. Schron.  Mr. Schron's claims are paradigmatic wrongful act claims for which Sava reasonably expected coverage under its private company D&O insurance program.  But the Insurers failed to honor their obligation to reimburse Sava for the millions of dollars that Sava incurred in defending itself in the Schron Action, plus the many millions more that Sava paid for the defense of Grunstein and Forman pursuant to its obligations to indemnify its members, directors, and officers under the terms of the Limited Liability Company Agreement ("Operating Agreement").

4.     While Sava's primary D&O insurer Zurich confirmed its agreement to provide coverage for the defense of Sava almost three years ago, Zurich has not honored that commitment.  Instead, Zurich now contends, without explanation, that nearly half of the Defense Costs Sava incurred in defending itself are somehow unrelated to the defense of the Schron Action.  Not only is this contention incorrect, but Zurich has repeatedly refused to provide Sava with any support for it.  Thus, while Zurich has reimbursed Sava for a portion of its Defense Costs in the Schron Action, millions of dollars more in covered Defense Costs remain unreimbursed.

---

[1]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the relevant insurance policy.

5.      As for the Grunstein and Forman Defense Costs, after "investigating" the claims against Grunstein and Forman for more than fifteen months, Zurich denied coverage for those costs on only one basis: that the allegations in the Schron Action did not allege wrongful acts against Grunstein and Forman in their capacities as "Insured Persons" of Sava.  Sava's excess insurer Beazley expressly adopted Zurich's coverage position, denying coverage for the exact same reason.  Neither Zurich's nor Beazley's coverage denial letters identified any other basis for their coverage denials.

6.      The Insurers' coverage position with respect to the Grunstein and Forman Defense Costs is incorrect because the Schron Action contains allegations that Grunstein and Forman engaged in wrongful acts in their capacities as Sava directors and managers.  As is clear from the four corners of the Schron complaint, the misconduct that Grunstein and Forman allegedly engaged in would not have been possible but for their positions at Sava.

7.      Furthermore, it is undisputed that Sava indemnified Grunstein and Forman for their Defense Costs pursuant to the terms and conditions of the indemnity provision in Sava's Operating Agreement, which Sava would not have done if the allegations in the Schron Action had nothing to do with Grunstein's and Forman's service as directors and managers of Sava. Indeed, even Zurich has acknowledged that Grunstein "utilized entities that he and/or his associates owned or controlled, including the insured, SavaSeniorCare, LLC," to commit the various wrongful acts alleged in the Schron Action.

8.      And even if, as Zurich has argued, some of the allegations in the Schron Action are directed to actions that Grunstein and Forman took outside their capacities as directors and managers of Sava, under the Zurich policy (to which the Beazley policy follows form), "[i]f the

**Insureds** incur both **Loss** covered by this policy and loss not covered by this policy . . . because a **Claim** against the **Insureds** includes both covered and uncovered matters . . . . *then 100% of such Defense Costs will be considered covered Loss*" (italics added).  There is no plausible reading of this provision that would allow the Insurers to deny reimbursement to Sava for any of the Defense Costs it paid for the defense of Grunstein and Forman in the Schron Action.

9.      For these reasons and those set forth in further detail below, the Insurers have breached their contractual coverage obligations by refusing to reimburse Sava for Loss covered by their policies.  As a result of the Insurers' wrongful denial of coverage, Sava has been forced to file this action for a declaratory judgment and breach of contract to receive the benefit of the insurance coverage it purchased from the Insurers.

**THE PARTIES**

10.     Plaintiff SavaSeniorCare, LLC is a limited liability company organized under the laws of Delaware.  Sava provides short-term and long-term health care services through skilled nursing facilities, and is one of the largest providers of skilled nursing facility services in the United States.

11.     The sole member of SavaSeniorCare, LLC is Proto Equity Holdings, LLC, a limited liability company organized under the laws of Delaware.  The sole member of Proto Equity LLC is Terpax, Inc., a corporation organized under the laws of Delaware with its principal place of business in Atlanta, Georgia.

12.     Defendant Zurich is a corporation organized under the laws of New York with its principal place of business in Illinois.  Zurich is an insurer engaged in the business of selling insurance contracts to commercial entities in Georgia and elsewhere.

13.     Defendant Beazley is a corporation organized under the laws of Connecticut with its principal place of business in Connecticut.  Beazley is an insurer engaged in the business of selling insurance contracts to commercial entities in Georgia and elsewhere.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

15.     This Court has personal jurisdiction over Zurich and Beazley because Zurich and Beazley have submitted to jurisdiction in this state by: (a) transacting business in Georgia; and (b) entering into insurance policies covering an entity located within Georgia at the time of contracting.

16.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Sava's claims occurred in Atlanta, Georgia, where Sava is located.

## FACTUAL ALLEGATIONS

17.     Sava incorporates by reference, as if fully set forth herein, the allegations in paragraphs 1-16 above.

### The Insurance Policies

*The Zurich Policy*

18.     Zurich agreed to provide insurance coverage to Sava under Private Company Directors, Officers and Employees Liability Policy, Policy Number DOC 594311701 (the "Zurich Policy"), attached as Exhibit A.

19.     Zurich issued the Zurich Policy to Sava as the Named Insured.  The Zurich Policy was delivered to Sava at its headquarters in Atlanta, Georgia.

20.     The Zurich Policy provides broad insurance protection for Sava against Losses arising from third-party claims alleging wrongful acts on the part of Sava, its current or former directors, officers, and managers, and other Insureds under the Zurich Policy.  The Zurich Policy has an applicable limit of $15 million for the policy period of December 31, 2009 to December 31, 2010.

21.     The named **Insured** in the Zurich Policy is SavaSeniorCare, LLC.

22.     The Zurich Policy contains several "Insuring Clauses" providing different types of insurance to Sava, including the "Company Liability Coverage" section, which provides coverage for claims against Sava, and the "Company Reimbursement Coverage" section, which provides coverage for claims against Sava's directors, officers, Managers, and other Insureds for which Sava grants indemnification.

23.     The Company Liability Coverage Insuring Clause ("Insuring Clause D"), which is located in Endorsement Number 5 of the Zurich Policy, provides

> The Underwriter shall pay on behalf of the **Company** all **Loss** for which the **Company** becomes legally obligated to pay on account of any **Claim** first made against the **Company** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** taking place before or during the **Policy Period**.

Zurich Policy, Endorsement No. 5 § 1.D.

24.     The Company Reimbursement Coverage Insuring Clause ("Insuring Clause B") provides:

> The Underwriter shall pay on behalf of the **Company** all **Loss** for which the **Company** grants indemnification to the **Insured**

6

> **Persons**, as permitted or required by law, and which the **Insured Persons** have become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** taking place before or during the **Policy Period**.

Zurich Policy § I.B.

25.     The Zurich Policy defines "Wrongful Act," in relevant part, as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted (i) by any of the **Insured Persons**, individually or otherwise, in their capacity as **Insured Persons**, or any matter claimed against them solely by reason of their serving in such capacity, or . . . (iii) by the **Company**."  Zurich Policy § III.S; Endorsement No. 5.

26.     The Zurich Policy defines "Insureds" as "either in the singular or plural, means any one or more **Insured Persons** and the **Company**."  Zurich Policy § III.H.

27.     The Zurich Policy defines "Insured Persons" as "any person who has been, now is or shall become a duly elected director or a duly elected or appointed officer or **Manager** of the **Company** . . . ."  Zurich Policy § III.I.

28.     The Zurich Policy defines "Manager" as "any natural person who is legally responsible in whole or in part for the supervision and/or the management of any **Company** that is a limited liability company, including without limitation, managers, managing members, directors, officers, or any natural person serving in an equivalent position with the **Company**."  Zurich Policy § III.L.

7

29.     The Zurich Policy defines "Claim" as, among other things, "a civil proceeding commenced by the service of a complaint or similar pleading . . . against any **Insured Person** . . . against the **Company** for a **Wrongful Act**."  Zurich Policy, Endorsement No. 3.

30.     The Zurich Policy defines "Loss" as "the total amount which the **Insureds** become legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** . . . made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages, judgments, settlements, and **Defense Costs**," subject to certain exclusions not applicable here.  Zurich Policy § III.K.

31.     The Zurich Policy provides that "**Defense Costs**" means "that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, trustees, officers, **Managers** or employees of the **Company**) incurred in defending or investigating **Claims** and the premium for appeal, attachment or similar bonds."  Zurich Policy § III.C.

32.     In addition to agreeing to pay for Defense Costs incurred by its Insureds, Zurich also agreed to accept the duty to defend Claims against the Insureds.  As set forth in the General Conditions and Limitations of the Zurich Policy, "it shall be the right and duty of [Zurich], and not the **Insureds**, to defend **Claims** against the **Insureds**, even if the allegations in the **Claim** are groundless, false or fraudulent."  Zurich Policy § V.F.

33.     The General Conditions and Limitations section of the Zurich Policy contains a "Presumptive Indemnification" provision which states as follows:

> If the **Company** is permitted or required by common or statutory law, but fails or refuses, other than for reason of

8

**Financial Impairment**, to indemnify the **Insured Persons** for **Loss**, then, notwithstanding any other conditions, provisions or terms of this policy to the contrary, any payment by the Underwriter of such **Loss** shall be subject to the Deductible Amount set forth in Item 4 of the Declarations.

For purposes of this Subsection V.A., the shareholder and board of director resolutions, *operating agreement*, organizing agreement, limited liability company agreement, articles of organization, certificate of formation, resolutions, or provisions providing indemnification to the **Insured Persons** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by law.

Zurich Policy § V.A. (italics added).

34.     The General Conditions and Limitations section of the Zurich Policy also contains an "Allocation" provision that provides:

If the **Insureds** incur both **Loss** covered by this policy and loss not covered by this policy either because a **Claim** against the **Insureds** includes both covered and uncovered matters or because a claim is made against both **Insureds** and others (including the **Company** in a **Claim** other than an **Employment Practices Claim**), then 100% of such **Defense Costs** will be considered covered **Loss** and all other such loss shall be allocated by the **Insured Persons**, the **Company** and the Underwriter between covered **Loss** and uncovered loss based upon the relative legal exposure of the parties to covered and uncovered matters.

Zurich Policy § V.D.

35.     Sava has paid substantial premiums in return for the insurance coverage that Zurich agreed to provide, and has fully complied with all other terms and conditions of the Zurich Policy.

9

*The Beazley Policy*

36.     Beazley agreed to provide insurance coverage to Sava under the Excess Insurance Policy, Policy Number V15QJX090201 (the "Beazley Policy") (together with the Zurich Policy, the "Policies"), attached as Exhibit B.

37.     Beazley issued the Beazley Policy to Sava as the Named Insured.  The Beazley Policy was delivered to Sava at its headquarters in Atlanta, Georgia.

38.     The Beazley Policy is an excess insurance policy that provides additional insurance protection to Sava against Losses arising from third-party claims alleging wrongful acts on the part of Sava, its current or former directors and officers, and other Insureds, in the event the Zurich Policy's underlying $15 million limits are exhausted.  The Beazley Policy provides an additional $10 million in insurance coverage, and has a policy period of December 31, 2009 to December 31, 2010.

39.     The named **Insured** in the Beazley Policy is SavaSeniorCare, LLC.

40.     The Beazley Policy provides that "[e]xcept as otherwise provided, [the Beazley Policy] shall follow form of the underlying insurance" provided by the Zurich Policy.

41.     The insuring clause of the Beazley Policy provides that:

> To pay on behalf of the **Insured** excess of the **Underlying Policies** any claim or loss which triggers coverage under the **Underlying Policies**, and is not otherwise excluded by the terms, conditions or endorsements of this Policy, and which is reported to the Insurer in accordance with Clause VI. of this Policy.

Beazley Policy § I.

42.     The Beazley Policy defines "Insured" as "all persons and entities insured under the **Primary Policy**."  Beazley Policy § II.A.

43.     The term "Underlying Policies" in the Beazley Policy refers to the Zurich Policy. Beazley Policy § II.F.

44.     Sava has paid substantial premiums in return for the insurance coverage that Beazley agreed to provide, and has fully complied with all other terms and conditions of the Beazley Policy.

### The Underlying Litigation

45.     The Schron Action was filed on June 23, 2010, within the Policy Period for the Policies.  The Plaintiffs in the Schron Action include Rubin Schron and a series of other entities related to and/or controlled by Schron  (the "Schron Plaintiffs").   The Schron Plaintiffs subsequently filed an Amended Verified Complaint (the "Schron Complaint") alleging fifteen causes of action against Sava, Grunstein, Forman, and various other individuals and entities.  The Schron Complaint is attached as Exhibit C.

46.     The Schron Complaint alleged that Grunstein and Forman "serve as Directors of Sava; Grunstein is the Chairman of the Board."  Schron Compl. ¶ 49.

47.     In the years preceding the filing of the Schron Complaint, the Schron Plaintiffs had no ownership interest in Sava.  However, most of the nursing facilities that Sava operated were leased from entities owned or controlled by Schron.  In addition, one of Schron's companies asserted the right to exercise an option to acquire Sava's former parent, SVCARE Holdings, LLC (the "SVCARE Option").

48.     In the Schron Action, the Schron Plaintiffs sought, among other things, specific performance of the SVCARE Option, which would have the effect of giving Schron ownership and control of Sava, and removing Grunstein and Forman from their positions as directors and

managers of Sava.  The validity, interpretation, and performance of the SVCARE Option were hotly contested in the Schron Action.

49.     In support of their effort to wrest control of Sava from Grunstein and Forman, the Schron Plaintiffs generally alleged a broad scheme on the part of Grunstein, Forman, Sava, and others, to take improper advantage of Mr. Schron in connection with the acquisition and operation of Sava.  *See* Schron Compl. ¶ 5.  Specifically, the Schron Plaintiffs alleged conflicts and breaches of various duties by Grunstein and Forman in connection with the drafting and negotiation of various documents, including: the SVCARE Option; Sava's master lease with entities controlled by Mr. Schron (the "Sava Master Lease"); and a loan agreement between SVCARE and another Schron-controlled entity (the "SVCARE Loan"), which had the purpose of capitalizing SVCARE and Sava.  Schron Compl. ¶¶ 138, 158.

50.     With respect to the Sava Master Lease, the Schron Plaintiffs alleged that Grunstein and Forman obtained favorable rental terms for Sava through a breach of fiduciary duty to Schron.  Schron Compl. ¶¶ 14, 160.

51.     The Schron Plaintiffs also alleged that in connection with a $1 billion refinancing transaction in 2006, Grunstein and Forman purported to represent Schron's interests as well as the interests of Sava and its subsidiaries in the refinancing transaction, and in doing so, they altered to Sava's advantage the terms of Sava's Master Lease, the SVCARE Option, and the SVCARE Loan, thereby injuring the Schron Plaintiffs.  Schron Compl. ¶¶ 159-60.

52.     Further, the Schron Plaintiffs alleged that Grunstein and Forman had made "large recent distributions" to themselves from Sava's cash flow and assets rather than repaying the

SVCARE Loan, thereby "subordinating the economic interests" of the Schron Plaintiffs to the interests of Sava, the "operating company that they owned in whole."  Schron Compl. ¶¶ 14, 143.

53.     Because of their concern that Grunstein and Forman might dissipate the assets of Sava, on the same day they filed their complaint, the Schron Plaintiffs sought a preliminary injunction to bar Grunstein, Forman, and Sava from dissipating Sava's assets before the Court could rule on the validity of the SVCARE Option.  In support of that motion, Schron asserted that Grunstein threatened to "ensure that by the time the litigation was over, Sava and its subsidiaries would be worthless," that Grunstein and Forman had "complete control over . . . Sava," and that Grunstein and Forman might "dissipate" Sava's assets "so as to make [the] Court's eventual judgment wholly or partially ineffective."  A copy of Schron's memorandum of law in support of the motion for preliminary injunction is attached as Exhibit D.

54.     In an affidavit that Schron submitted in support of the Schron Plaintiffs' motion for preliminary injunction, Schron testified as follows:

> I have a specific reason to fear that Defendants intend to remove assets from the company [Sava].  In a conversation during 2009, Grunstein threatened that if I ever sought to initiate litigation against him concerning SVCARE and Sava, he not only would fight me in court, but he would ensure that by the time the litigation was over, Sava and its subsidiaries would be worthless.

> [] In addition, Defendants have demonstrated over the past several years that they have no scruples and a long history of manipulating corporate entities to convert, secrete, or otherwise acquire value for themselves. Most notably, in 2009, Grunstein and Forman took $49 million out of Sava and gave it to themselves. In the first four months of 2010, they distributed nearly $26 million to themselves. The Defendants made these distributions even though SVCARE currently owes over $150 million to Cam Funding III in principal and interest. There is every reason to think that these distributions will accelerate now that, in fact, Cam Equity has exercised its right under the option.

A copy of Schron's affidavit is attached as Exhibit E.

55.     In their complaint, the Schron Plaintiffs claimed that the alleged wrongful activities of Sava, as well as the actions taken by Grunstein and Forman on behalf of Sava, gave rise to various claims for damages and equitable relief.

## The Defense of the Underlying Schron Action

56.     Sava engaged the law firm of Arnall Golden Gregory LLP ("AGG") in Atlanta, Georgia as its primary defense counsel for the Schron Action.  Sava also hired Brodegaard & Associates LLC ("Brodegaard") in New York, New York to serve as its local counsel.  Sava incurred substantial Defense Costs in connection with defending the Schron Action.

57.     Grunstein and Forman engaged the law firm DLA Piper ("DLA") to defend them in the Schron Action, and requested indemnification for their Defense Costs from Sava.  Section 6.9 of the Limited Liability Company Agreement (the "Operating Agreement") entered into between Sava and SVCARE Holdings LLC ("SVCARE") on December 10, 2004 provides that Sava will indemnify any Covered Person against "any Damages suffered or incurred by such Covered Person as such, or any of them in the course of serving in any office of, or otherwise representing or acting for or on behalf of [Sava]."  A copy of the Operating Agreement is attached as Exhibit F.

58.     SVCARE was the sole managing member of Sava and had the right to manage the affairs of Sava.  SVCARE appointed Grunstein and Forman as directors and managers of SVCARE and, through the Operating Agreement, Grunstein and Forman were directors and managers of Sava, and therefore Covered Persons under the Operating Agreement.

59.     Grunstein and Forman requested indemnification for the Schron Action under the Operating Agreement.   Following an analysis of the claims in the Schron Action, Sava determined that the allegations against Grunstein and Forman arose from or were related to actions they took while acting for or on behalf of Sava.

60.      Accordingly, Sava's Board of Directors authorized the indemnification of Grunstein's and Forman's Defense Costs in the Schron Action pursuant to Section 6.9 of the Operating Agreement.

61.     During the course of the Schron Action, Schron attempted—but failed—to enjoin Sava from indemnifying Grunstein and Forman.  On July 28, 2011, the court presiding over the Schron Action found that "advances to cover legal expenses of persons Sava has agreed to indemnify are authorized by the company's Operating Agreement.  Counsel for Sava has represented that the advance was approved.  The court will not second-guess this decision of the current authorized officers of the company as to either the scope of the indemnity obligations or the amount of the advance.  Absent a showing that the advance is merely a disguised scheme to dissipate assets, the court will not intervene."  Thus, there is no question that Sava's indemnification of Grunstein and Forman was permitted by law.  A copy of the July 28, 2011 order is attached as Exhibit G.

62.     In fulfilling its indemnity obligation to its former directors and managers, Sava paid DLA Piper, and later the law firm of Zuckerman Spaeder, which replaced DLA Piper, millions of dollars in Defense Costs.

63.     All of the Defense Costs Sava paid on its own behalf and pursuant to its indemnity obligation to Grunstein and Forman are covered Defense Costs under the Policies.

15

## **The Insurers' Failure to Honor Their Policy Obligations**

64.     Sava provided Zurich and Beazley timely notice of the Schron Action on June 29, 2010, and requested coverage for the claims against Sava, Grunstein, and Forman.

65.     On June 30, 2010, Zurich acknowledged receipt of Sava's claim for insurance coverage.  Approximately three months later, after substantial Defense Costs had been incurred, Zurich issued a reservation of rights letter on September 29, 2010.

66.     In the September 29, 2010 reservation of rights letter, Zurich stated that based on its review of the allegations in the Schron Action and the Zurich Policy, it had concluded that the Schron Action may trigger the Policy's coverage for Company Liability Claims, but Zurich did not agree to fulfill its duty to defend Sava or otherwise reimburse its Defense Costs at that time. A copy of the September 29, 2010 letter is attached as Exhibit H.

67.     Zurich also acknowledged on September 29, 2010 that the Schron Complaint included allegations that Mr. Grunstein engaged in alleged misconduct utilizing "entities that he and/or his associates owned or controlled, including the insured, SavaSeniorCare, LLC." However, Zurich did not agree at that time to defend Grunstein or Forman, or to provide coverage for their Defense Costs.  In fact, Zurich did not even provide a coverage determination until October 7, 2011.

68.     Beazley acknowledged receipt of Sava's claim for insurance coverage on July 14, 2010 and issued a reservation of rights letter on November 12, 2010, but Beazley did not provide its coverage determination until November 16, 2011.

69.     In a letter dated October 7, 2011, Zurich finally issued its coverage determination, and agreed to "provide coverage for the defense of Sava, exclusively, in the Schron Action,

subject to a full reservation of rights, including a review of the defense counsel invoices incurred to date." A copy of the October 7, 2011 letter is attached as Exhibit I.

70.     In the same October 7, 2011 letter, the only basis for Zurich's denial of coverage for the Grunstein and Forman Defense Costs was that "the allegations in the Schron Action do not allege wrongful acts in their respective insured capacities."

71.     On November 16, 2011, Beazley finally issued its coverage determination. Beazley informed Sava that it "adopts and incorporates herein as applicable to the excess policy the coverage position espoused by Zurich in its October 7, 2011 letter."  Accordingly, Beazley agreed to provide coverage for the defense of Sava, but denied coverage with respect to Grunstein and Forman solely on the basis that "coverage is not available for defendants Leonard Grunstein and Murray Forman since the complaint does not allege wrongful acts in their capacity as Sava directors or officers." A copy of the November 16, 2011 letter is attached as Exhibit J.

72.     To date, Sava has paid more than $5 million in Defense Costs to AGG and Brodegaard in defending the Schron Action, yet Zurich has reimbursed Sava only a fraction of this amount and has wrongfully refused to pay the unreimbursed Defense Costs.

73.     In support of its claim for Defense Costs, Sava has submitted defense invoices from AGG and Brodegaard to Zurich for review.  Zurich contends that a large portion of the AGG and Brodegaard invoices are for unrelated matters or contain vague billing entries, but has invited Sava to provide additional information regarding these defense invoices in support of its claim for reimbursement.  Sava has fully cooperated with all of Zurich's requests for additional information, but the information Sava has provided has simply been ignored.

74.     For example, Sava has repeatedly attempted to explain the allegedly vague billing entries, which are not vague, to demonstrate that those entries reflect fees for legal work that is recoverable under the Policy.  Sava's defense counsel in the Schron Action also has explained on multiple telephone calls why the invoices reflect legal work that was related to and in furtherance of Sava's defense of the Schron Action.

75.     Zurich represented on July 19, 2012 that "upon receipt of confirmation that such [allegedly vague] billing entries were incurred for the Schron Action, Zurich will issue the proper reimbursement," yet Zurich has failed to do so after receiving confirmation from Sava's defense counsel.  Instead, Zurich has arbitrarily reimbursed Sava for only 50% of any billing entries it deems to be vague.  Zurich has provided no basis under the terms of the Policy for the arbitrary 50% discount.

76.     In response to Zurich's 50% determination, in July 2012 Sava again attempted to explain how the allegedly unrelated matters that Zurich discounted were neither vague nor unrelated.  Sava sent lengthy responses to address Zurich's purported concerns, explaining why each of the allegedly vague or unrelated matters was in fact directly related to the defense of Sava in the Schron Action.  In addition, Sava offered to arrange further calls with Sava's defense counsel in the Schron Action to explain any allegedly vague or unrelated time entries on the AGG and Brodegaard invoices.  These offers have fallen on deaf ears, and Zurich has continued to refuse to remit full payment pursuant to the terms of the Policy without providing any justifiable basis for doing so.

77.     On July 23, 2013, after Sava had attempted to resolve Zurich's concerns about billing entries for more than a year, Zurich's counsel reiterated that Zurich would not pay for

time entries it unilaterally deemed unrelated or vague, ignoring all of the information Sava had provided in an effort to address Zurich's purported concerns, and failing to explain how Zurich concluded that Sava's defense invoices were objectionable.

78.     Zurich's counsel also noted that "in regards to our recent discussions regarding the unreimbursed billing entries, as well as our recent conference call with Sava's defense counsel, Kevin Getzendanner, we are currently reviewing this information with Zurich and will separately provide a response as to those entries."  Of course, Zurich had provided similar assurances in 2012.  And it has now been well over a year since Zurich said it would complete its review of the information it requested from its policyholder.

79.     Zurich's wrongful failure to pay the full amount of Sava's Defense Costs arising from the Schron Action, and Zurich's and Beazley's wrongful denial of coverage for the Defense Costs arising out of Grunstein's and Forman's defense of the Schron Action, has stripped Sava of the benefit of the insurance coverage it purchased to protect itself against the risk of wrongful act claims like the Schron Action, forcing Sava to pay for millions of dollars in legal expenses without the benefit of the insurance that the Insurers promised to provide.

## COUNT I
## BREACH OF CONTRACT

### (DEFENSE COSTS FOR SAVA)

80.     Sava incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-79 above.

81.     The Policies are insurance contracts under which the Insurers received substantial premiums in exchange for a promise to provide broad insurance coverage, including coverage for Losses arising from the Schron Action.

19

82.     Sava has complied with all applicable provisions of the Policies.

83.     The Insurers failed to provide Sava with a defense to the Schron Action, and therefore breached their duty to defend.

84.     Moreover, by failing to reimburse Sava for the full amount of the Defense Costs Sava incurred in connection with defending the claims against Sava in the Schron Action, the Insurers have expressly and wrongfully repudiated their coverage obligations and declined to honor the promises they made when they issued the Policies.

85.     The Insurers' wrongful repudiation of their coverage obligations to Sava is a breach of each of the Policies.

86.     As a result of the Insurers' breaches of the Policies, Sava has sustained substantial damages, in an amount to be established at trial.

<u>**COUNT II**</u>
<u>**DECLARATORY JUDGMENT**</u>

**(DEFENSE COSTS FOR SAVA)**

87.     Sava incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-86 above.

88.     The Policies are insurance contracts under which the Insurers received substantial premiums in exchange for a promise to provide broad insurance coverage, including coverage for Losses arising from the Schron Action.

89.     Sava has complied with all applicable provisions of the Policies.

90.     The Insurers agreed to provide coverage for the defense of Sava in the Schron Action nearly three years ago.

91.     Neither Zurich nor Beazley has denied coverage to Sava for any of its Defense Costs incurred in defending the Schron Action.

92.     Zurich has arbitrarily refused to reimburse Sava for the full amount of Defense Costs Sava incurred in connection with defending the Schron Action.

93.     By failing to reimburse Sava for the full amount of the Defense Costs Sava incurred in connection with defending the claims against Sava in the Schron Action, Zurich and Beazley have expressly and wrongfully repudiated their coverage obligations and declined to honor the promises they made when they issued the Policies.

94.     An actual case or controversy exists regarding Sava's rights and the Insurers' obligations under the Policies to pay Defense Costs incurred by Sava related to the Schron Action.

95.     Pursuant to 28 U.S.C. § 2201, Sava seeks a declaratory judgment from this Court establishing the following:

(a) Sava's Losses arising from the Defense Costs Sava incurred in the defense of the Schron Action are insured Losses under the Policies; and

(b) the Insurers are obligated to pay Sava for the full amount of the Defense Costs incurred in the defense of Sava in the Schron Action.

**COUNT III**
**BREACH OF CONTRACT**

**(DEFENSE COSTS FOR GRUNSTEIN AND FORMAN)**

96.     Sava incorporates by reference, as if fully set forth herein, the facts set forth in paragraphs 1-95 above.

97.     The Policies are insurance contracts under which Zurich and Beazley were paid substantial premiums in exchange for providing broad insurance coverage, including coverage for Losses arising from the Schron Action.

98.     Sava has complied with all applicable provisions of the Policies.

99.     Grunstein and Forman are Insured Persons under the Policies, and Sava has paid for their Defense Costs in the Schron Action.

100.    By denying coverage to Sava for the full amount of Defense Costs incurred in connection with Sava's indemnification of Grunstein and Forman for the Defense Costs they incurred in defending the Schron Action, Zurich and Beazley have expressly and wrongfully denied their coverage obligations and declined to honor the promises they made when they issued Policies.  The Insurers' wrongful denial of their coverage obligations to Sava is a breach of each of the Policies.

101.    As a result of the Insurers' breaches of the Policies, Sava has sustained substantial damages, in an amount to be established at trial, for which the Insurers are liable to Sava.

## PRAYER FOR RELIEF

**WHEREFORE,** Sava respectfully prays that the Court:

(1)     enter judgment on Count I in favor of Sava and against the Insurers;

(2)     enter judgment on Count I for compensatory damages in favor of Sava and against the Insurers in an amount sufficient to compensate Sava for all Losses sustained as a result of the Insurers' breaches of the Policies by refusing to pay the full amount of Defense Costs incurred by Sava in defending the claims against it in the Schron Action;

(3)     enter a declaratory judgment on Count II in favor of Sava and against the Insurers, declaring as follows:

(a)     Sava's Losses arising from the Defense Costs Sava incurred in the defense of the Schron Action are insured Losses under the Policies; and

(b)    the Insurers are obligated to pay Sava for the full amount of their respective shares of the Defense Costs incurred in the defense of the Schron Action;

(4)    enter judgment on Count III in favor of Sava and against the Insurers;

(5)    enter judgment on Count III for compensatory damages in favor of Sava and against the Insurers in an amount sufficient to compensate Sava for all Losses sustained as a result of the Insurers' breaches of the Policies by refusing to pay the full amount of Defense Costs incurred by Sava in indemnifying Grunstein and Forman for their defense of the claims against them in the Schron Action;

(6)    award to Sava and against the Insurers prejudgment interest, to be calculated according to law, to compensate Sava for the loss of use of funds caused by the Insurers' wrongful refusal to pay Sava for the full amount in Defense Costs incurred in connection with the Schron Action; and

(7)    award Sava such other, further, and additional relief as this Court deems just and appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Sava hereby demands that all claims in this action be tried to a jury.

Respectfully submitted this 22nd day of August, 2014.

*/s/ Anthony P. Tatum*
Anthony P. Tatum
Georgia Bar No. 306287
Shelby S. Guilbert
Georgia Bar No. 315101
Sarah E. Statz
Georgia Bar No. 568068
Michael B. Wakefield
Georgia Bar No. 950517
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309
404-572-4600 (Phone)
404-572-5138 (Fax)

ttatum@kslaw.com
sguilbert@kslaw.com
sstatz@kslaw.com
mwakefield@kslaw.com

*Attorneys for Plaintiff*