**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| SAVASENIORCARE, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:14-CV-2738-RWS |
| BEAZLEY INSURANCE | : | |
| COMPANY, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>ORDER</u>

This case comes before the Court on Plaintiff SavaSeniorCare LLC's

Rule 12(c) Motion for Judgment on the Pleadings [36], Defendant Beazley

Insurance Company's Motion for Leave to Amend its Answer and Affirmative

Defenses [43], Defendant Zurich American Insurance Company's Request for

Judicial Notice [46], Defendant Beazley Insurance Company's Motion for

Judgment on the Pleadings [63], and Defendant Beazley Insurance Company's

Motion for Leave to Submit Supplemental Authority [68].  As an initial matter,

Defendant Zurich American Insurance Company ("Zurich") was terminated

from this law suit on May 5, 2015 [58].  Accordingly, Zurich's Request for

Judicial Notice [46] is **DENIED as moot**. After reviewing the record, the Court

enters the following Order.

## Background

This case arises out of an insurance dispute between Plaintiff SavaSeniorCare, LLC ("Sava") and Zurich and Defendant Beazley Insurance Company, Inc. ("Beazley").  Sava obtained private company directors and officers ("D&O") insurance coverage to protect itself from, *inter alia*, costs of defending lawsuits brought against Sava and its officers, directors, and managers.  (Am. Compl., Dkt. [8] ¶ 2.)  Zurich provided the primary coverage while Beazley is the excess carrier.

Sava seeks indemnification for its costs in defending the lawsuit that underpins this case, Schron v. Grunstein, No. 650702/2010 (N.Y. Sup. Ct.) (the "Schron Action").  (Id. ¶ 1.)  The plaintiffs in the Schron Action (the "Schron plaintiffs") sued Sava and two of its former directors and managers, Leonard Grunstein and Murray Forman.  (Id.)  The Schron plaintiffs alleged that Sava, Grunstein, Forman, and other entities engaged in misconduct that damaged real estate investor Rubin Schron and other entities under his control.  (Id. ¶ 3.)  Sava claims that the Schron Action involved "paradigmatic wrongful act claims for which Sava reasonably expected coverage under its private company D&O

AO 72A
(Rev.8/82)

insurance program."  (<u>Id.</u> ¶ 3.)  Sava spent "millions of dollars" defending itself and "many millions more" defending Grunstein and Forman.  (<u>Id.</u>)

Sava sought reimbursement of these defense costs from its primary D&O insurer, Zurich, and its excess D&O insurer, Beazley.  (<u>Id.</u> ¶¶ 4-5.)  Zurich, which is no longer a party to this action (<u>see</u> Dkt. [58]), reimbursed Sava for a portion of its costs in defending itself in the Schron Action, but denying coverage for "nearly half" of Sava's incurred costs.  (Am. Compl., Dkt. [8] ¶ 4.) Additionally, Zurich denied coverage for Sava's costs incurred defending Grunstein and Forman on the basis that the claims in the Schron Action "did not allege wrongful acts against Grunstein and Forman in their capacities as 'Insured Persons.'" (<u>Id.</u> ¶ 5.)  Beazley expressly adopted Zurich's coverage position without citing any additional bases for denial of coverage.  (<u>Id.</u>)

Sava obtained D&O coverage from Zurich under Private Company Directors, Officers and Employees Liability Policy, Policy Number DOC 594311701 (the "Zurich Policy").  (<u>Id.</u> ¶ 18.)  The Zurich Policy has an applicable limit of $15 million for the policy period of December 31, 2009 to December 31, 2010.  (<u>Id.</u> ¶ 20.)  It names "SavaSeniorCare, LLC" as the Insured under the policy, and provides different types of coverage, including

3

"Company Liability Coverage" (coverage for claims against Sava) and

"Company Reimbursement Coverage" (coverage for claims against "Sava's

directors, officers, Managers, and other Insureds for which Sava grants

indemnification").  (Id. ¶¶ 21-22.)

Sava obtained excess insurance coverage from Beazley under the Excess

Insurance Policy, Policy Number V15QJX090201 (the "Beazley Policy").  (Id.

¶ 36.)  The Beazley Policy provides "additional insurance protection to Sava

against [l]osses arising from third-party claims alleging wrongful acts on the

part of Sava, its current or former directors and officers, and other Insureds, in

the event the Zurich Policy's underlying $15 million limits are exhausted."  (Id.

¶ 38.)  It has an applicable limit of $10 million for the policy period of

December 31, 2009 to December 31, 2010 and names "SavaSeniorCare, LLC"

as the Insured under the policy.  (Id. ¶¶ 38-39.)

The Beazley Policy provides that "[e]xcept as otherwise provided, [the

Beazley Policy] shall follow form of the underlying insurance" provided by the

Zurich Policy.  (Id. ¶ 40.)  The insuring clause obligates Beazley:

> To pay on behalf of the Insured excess of the Underlying Policies any
> claim or loss which triggers coverage under the Underlying Policies and
> is not otherwise excluded by the terms, conditions or endorsements of

4

[the Beazley] Policy, and which is reported to the Insurer in accordance
with Clause VI. of [the Beazley] Policy.

(<u>Id.</u> ¶ 41.)  The Beazley Policy defines "Insured" as "all persons and entities

insured under the Primary Policy," which refers to the Zurich Policy, as does

the term "Underlying Policies."  (<u>Id.</u> ¶¶ 42-43.)

Accordingly, even though Zurich is no longer a party to this law suit, the

insurance afforded by the Zurich Policy is relevant to the coverage provided

under the Beazley Policy.  The Company Liability Coverage Insuring Clause in

the Zurich Policy provides:

> The Underwriter shall pay on behalf of the Company all Loss for which
> the Company becomes legally obligated to pay on account of any Claim
> first made against the Company during the Policy Period or, if exercised,
> during the Extended Reporting Period, for a Wrongful Act taking place
> before or during the Policy Period.

(<u>Id.</u> ¶ 23.)

The Company Reimbursement Coverage Insuring Clause in the Zurich

Policy provides:

> The Underwriter shall pay on behalf of the Company all Loss for which
> the Company grants indemnification to the Insured Persons, as permitted
> or required by law, and which the Insured Persons have become legally
> obligated to pay on account of any Claim first made against them,
> individually or otherwise, during the Policy Period or, if exercised,
> during the Extended Reporting Period, for a Wrongful Act taking place

before or during the Policy Period.

(Id. ¶ 24.)

The Court will briefly recite the history of the Schron Action.  Rubin Schron and his related entities filed suit against Sava, Grunstein, Forman, and other individuals and entities on June 23, 2010, which was within the policy period for the Zurich and Beazley Policies.  (Id. ¶ 45.)  The Schron plaintiffs asserted fifteen causes of action seeking, *inter alia*, specific performance of an option to acquire Sava's former parent, SVCARE Holdings, LLC (the "SVCARE option").  (Id. ¶ 48; Schron Compl., Ex. C to Compl., Dkt. [1-4].)  Performance of the SVCARE option would have effectively transferred ownership and control of Sava to Schron and removed Grunstein and Forman from their positions as directors and managers of Sava.  (Am. Compl., Dkt. [8] ¶ 48.)

The Schron plaintiffs alleged in their complaint that Grunstein and Forman "serve as Directors of Sava; Grunstein is the Chairman of the Board" and that Grunstein and Forman breached various duties in the drafting and negotiation of various documents.  (Id. ¶¶ 46, 50.)  With respect to Sava's master lease with Schron-controlled entities, the Schron plaintiffs alleged that

6

Grunstein and Forman "obtained favorable rental terms for Sava through a breach of fiduciary duty to Schron." (Id. ¶ 51.)  Among other claims, the Schron plaintiffs further alleged that they were injured by Grunstein and Forman's representation of Sava in connection with a $1 billion refinancing transaction, in which Grunstein and Forman purported to represent Schron's interests but altered the terms of Sava's master lease, the SVCARE option, and a loan agreement between SVCARE and another Schron-controlled entity.  (Id. ¶ 52.)  The Schron plaintiffs alleged that Sava's wrongful acts, as well as acts of Grunstein and Forman as directors and/or managers of Sava, gave rise to various claims for damages and equitable relief.  (Id. ¶ 56.)

Sava engaged the law firm of Arnall Golden Gregory LLP as its primary defense counsel and hired Brodegaard & Associates LLC as its local counsel in New York.  (Id. ¶ 57.)  Grunstein and Forman engaged the law firm DLA Piper for their defense.  (Id. ¶ 58.)

Grunstein and Forman requested that Sava indemnify them for their costs in defending the Schron Action, pursuant to the Limited Liability Company Agreement (the "Operating Agreement") between Sava and SVCARE Holdings LLC ("SVCARE").  (Id. ¶ 58.)  The Operating Agreement provides that Sava

will indemnify Covered Persons against "any Damages suffered or incurred by such Covered Person as such, or any of them in the course of serving in any office of, or otherwise representing or acting for or on behalf of [Sava]." (Id.)

SVCARE, as the sole managing member of Sava, had the right to manage its affairs. (Id. ¶ 59.) Grunstein and Forman were appointed directors and managers of SVCARE and therefore, through the terms of the Operating Agreement, were also directors and managers of Sava. (Id.) Accordingly, Grunstein and Forman were Covered Persons under the Operating Agreement and sought indemnification pursuant to the terms of that agreement. (Id.) Sava determined that the claims against Grunstein and Forman in the Schron action arose from or were related to actions they took while acting for or on behalf of Sava. (Id. ¶ 60.) Sava's Board of Directors therefore authorized indemnification of Grunstein and Forman's defense costs. (Id. ¶ 61.) Accordingly, in addition to paying its own defense costs, Sava ultimately paid DLA Piper and its successor firm Zuckerman Spaeder millions of dollars for Grunstein and Forman's defense costs. (Id. ¶¶ 63-64.)

Sava provided Zurich and Beazley notice of the Schron Action on June 29, 2010 and at that time requested coverage for the costs of defending the

AO 72A
(Rev.8/82)

claims against Sava, Grunstein, and Forman.  (Id. ¶ 65.)  Zurich acknowledged receipt of Sava's claim on June 30 and issued a reservation of rights letter on September 29, stating that while the Schron Action "may trigger the Policy's coverage for Company Liability Claims," Zurich would not defend Sava or reimburse defense costs at that time.  (Id. ¶¶ 66-67.)  Beazley acknowledged receipt of Sava's claim on July 14 and issued a reservation of rights letter on November 12.  (Id. ¶ 69.)

Zurich issued a coverage determination in a letter dated October 7, 2011. (Id. ¶ 68.)  Zurich agreed to "provide coverage for the defense of Sava, exclusively, in the Schron Action, subject to a full reservation of rights, including a review of the defense counsel invoices incurred to date."  (Id. ¶ 70.) Zurich denied coverage for Grunstein and Forman's defense costs on the ground that "the allegations in the Schron Action do not allege wrongful acts in their respective insured capacities."  (Id. ¶ 71.)  Sava claims that it fully cooperated with all of Zurich's requests for additional information in support of Sava's claims.  (Id. ¶¶ 74-78.)

Beazley issued its coverage determination on November 16, 2011.  (Id. ¶ 69.)  In its position letter, Beazley informed Sava that it "adopts and

incorporates herein as applicable to the excess policy the coverage position espoused by Zurich in its October 7, 2011 letter." (Id. ¶ 72.)  Beazley similarly agreed to provide coverage for Sava's defense, but stated that "coverage is not available for defendants Leonard Grunstein and Murray Forman since the complaint does not allege wrongful acts in their capacity as Sava directors or officers."  (Id.)

Sava initiated this action on August 22, 2014 seeking payment of its defense costs from Zurich and Beazley, and filed an Amended Complaint on September 12, 2014.  (Dkt. [8].)  Sava alleges that Zurich wrongfully "fail[ed] to pay the full amount of Sava's Defense Costs arising from the Schron Action" and that Zurich and Beazley wrongfully denied "coverage for the Defense Costs arising out of Grunstein's and Forman's defense of the Schron Action." (Id. ¶ 80.)  Sava brings three claims: Count I, Breach of Contract (Defense Costs for Sava); Count II, Declaratory Judgment (Defense Costs for Sava); and Count III, Breach of Contract (Defense Costs for Grunstein and Forman).

Zurich has been terminated from this action.  Beazley reports that it has agreed to pay Sava's cost of defending itself, but denies coverage for Grunstein and Forman's costs of defending the Schron Action.  Beazley filed an Answer

and Affirmative Defenses on November 11, 2014 (Dkt. [19]) and now seeks to

amend its Answer to include a counterclaim for rescission "based on Sava's

misrepresentation in its application for insurance that Sava, Grunstein, and

Forman had no knowledge of any facts or circumstances or any actual or

alleged acts, errors, or omissions that might give rise to a future claim that

would fall within the scope of the Zurich Policy." (Def. Beazley Ins. Co.'s

Mot. for Leave to Amend its Ans. & Affirmative Defenses & Mem. of L. in

Supp. of Same ("Def.'s Mot. to Amend"), Dkt. [43] ¶ 4 (internal citation and

modifications omitted).) Further, Beazley seeks to amend its Answer to add

two more affirmative defenses based on Section V.B of the Zurich Policy and

Section 8 of Plaintiff's application. (Id. ¶ 5.) Beazley moves for this

amendment based on an alleged misrepresentation in Sava's application for

D&O insurance. Beazley made its motion on February 5, 2015, after receiving

invoices from Sava purporting to show that "Grunstein and/or Forman retained

legal counsel to represent them with respect to the circumstances surrounding

the dispute with the Schron Plaintiffs before the Policy Period began." (Am.

Ans., Dkt. [43-1] ¶ 134; Def.'s Reply in Supp. of Def.'s Mot. to Amend

("Def.'s Reply"), Dkt. [55] at 12.) Plaintiff opposes Defendant's Motion to

11

Amend.  (Dkt. [51].)  The Court now lays out the relevant legal standard before considering the parties' arguments, in turn.

## I.  Motion for Leave to Amend

Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend a pleading once as a matter of right within twenty-one days after service of the pleading, or, if the pleading requires a response, within twenty-one days after service of a responsive pleading or motion filed under Rule 12(b), (e), or (f).  Otherwise, under Rule 15(a)(2), the party must seek leave of court or the written consent of the opposing parties to amend.  Rule 15(a)(2) directs the Court to "freely give leave when justice so requires."  Despite this instruction, however, leave to amend is "by no means automatic."  Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).[1]  The trial court has "extensive discretion" in deciding whether to grant leave to amend.  Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir.1999).

In deciding whether to give a party leave to amend, the Court should consider factors such as whether there has been "undue delay, bad faith or

---

[1] In Bonner v. City of Prichard, the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.  661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

AO 72A
(Rev.8/82)

dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962).  "[W]hen a court denies the plaintiff leave to amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail."  SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 764 F.3d 1327, 1344 (11th Cir. 2014) (internal citation and modification omitted).

In this case, the Court finds that the Foman factors weigh in favor of permitting Defendant to amend its Answer to assert the affirmative defense of rescission.  First, the Court does not find such undue delay as to preclude Defendant from the opportunity to amend its Answer.  Although, as Plaintiff argues (Dkt. [51] at 11), Beazley's proposed amendment arises out of representations made by Plaintiff over four years ago, Beazley filed this Motion to Amend quickly after receiving the invoices that it claims supports its contention that Grunstein and/or Forman knew of the possibility of litigation prior to the policy period.  (Def.'s Reply, Dkt. [55] at 13.)  Additionally, as Defendant points out, the parties have not begun to respond to discovery

requests (id. at 15), and as such will not be prejudiced by permitting

amendment.  Nor is there any evidence of bad faith or dilatory motive.

Finally, the proposed Amendment does not appear to be futile.  Plaintiff

argues that Beazley's rescission claim fails as a matter of law because Beazley

waived any rescission claim by accepting an incomplete application and

because it failed to adequately plead rescission under Georgia law.  (Pl.'s Resp.

in Opp'n to Def.'s Mot. to Amend ("Pl.'s Resp."), Dkt. [51] at 10.)

> Under Georgia law,
>
> Misrepresentations, omissions, concealment of facts, and incorrect
> statements shall not prevent a recovery under the policy or
> contract unless:
>
>> (1) Fraudulent;
>>
>> (2) Material either to the acceptance of the risk or to the
>> hazard assumed by the insurer; or
>>
>> (3) The insurer in good faith would either not have issued
>> the policy or contract or would not have issued a policy or
>> contract in as large an amount or at the premium rate as
>> applied for or would not have provided coverage with
>> respect to the hazard resulting in the loss if the true facts
>> had been known to the insurer as required either by the
>> application for the policy or contract or otherwise.

O.C.G.A. § 33-24-7(b).  Plaintiff argues that Defendant's claim must fail

14

because, under Georgia law, an insurer must prove that "(1) [the insured's] representation was false; and (2) [the insured's] representation was material 'in that it changed the nature, extent, or character of the risk.'" Nappier v. Allstate Ins. Co., 766 F. Supp. 1166, 1168 (N.D. Ga. 1991) (quoting Oakes v. Blue Cross Blue Shield, 170 Ga. App. 335, 336 (1984)).  The Court finds that the allegations in the Amended Answer, taken as true as they must be at this stage, are sufficient to state a claim under this standard.

Plaintiff further argues that Endorsement No. 3 to the Zurich Policy contractually limits Beazley's right to rescind, because it requires Beazley to prove that the Insureds (1) knew that the facts on the application were untrue; and (2) knew that the facts were not truthfully disclosed on the application. (Pl.'s Resp., Dkt. [51] at 12.)  Beazley argues that Endorsement 3 of the Zurich Policy does not apply to the Beazley Policy, but even if it does, that Endorsement 3 is an *exclusionary provision* that does not limit Beazley's right to rescind.  (Def.'s Reply, Dkt. [55] at 10 (citing the policy, which states "this policy shall not afford coverage with respect to . . . any Insured Person who knew the facts that were not truthfully disclosed.").)  To be sure, the wording of a policy may prevent an insurer from rescinding coverage.  See Exec. Risk

15

Indem., Inc. v. AFC Enters., Inc., 510 F. Supp. 2d 1308, 1325 (N.D. Ga. 2007).

But the Court will not decide the effect of Endorsement 3 at this stage of the

proceeding. Rather, the Court decides only whether Defendant has alleged

sufficient facts to support a plausible claim for rescission. The Court finds that

it has, and thus that amendment would not be futile.

Plaintiff advances an alternative argument that Beazley's rescission

claim and affirmative defenses are extinguished under Hoover v. Maxum

Indemnity Co., 291 Ga. 402 (2012). (Pl.'s Resp., Dkt. [51] at 15; Pl.'s Mot. for

J. on the Pleadings, Dkt. [36-1].) Plaintiff claims that because Beazley cited a

single ground in its denial for coverage, it is now foreclosed from advancing

"new coverage defenses." (Pl.'s Resp., Dkt. [51] at 16.) Under Georgia law,

defenses to an insurer's obligation to pay a claim fall into two categories:

"policy defenses" and "coverage defenses." Under a policy defense, "an

insurer denies coverage based on the insured's failure to fulfill a procedural

condition of the insurance policy." Yeagley v. Allstate Ins. Co., No. 1:09-

CV-19-JOF, 2009 WL 2486320, at *6 (N.D. Ga. Aug. 12, 2009) (citing Sargent

v. Allstate Ins. Co., 165 Ga. App. 863, 865-66, 303 S.E.2d 43 (1983). Policy

defenses may be waived because they exist purely for the benefit of the insurer.

Id.  In contrast, "coverage defenses" allow an insurer to argue that the insurance policy does not cover the asserted injury.  Andrews v. Georgia Farm Bureau Mut. Ins. Co., 226 Ga. App. 316, 317, 487 S.E.2d 3, 4 (1997).  "The longstanding general rule is that neither waiver nor estoppel can be used to create liability not created by an insurance contract and not assumed by the insurer under the terms of the policy."  Id. (internal citation omitted). Accordingly, estoppel and waiver may not be asserted against "coverage defenses," because to do so would expand the scope of the contracted-for insurance coverage.  Yeagley, 2009 WL 2486320 at *6.

As alleged in the Amended Answer, Defendant's affirmative defenses and counterclaim for rescission are better understood as coverage defenses.  At bottom, Beazley argues that it would not have provided coverage to Sava had it received all the information known to Grunstein and Forman at the time of their application.  The Court cannot conclude that allowing amendment of the answer to assert Beazley's affirmative coverage defenses and rescission claim would be futile.

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Leave to Amend its Answer and Affirmative Defenses [51].

17

## II.     Motions for Judgment on the Pleadings

Under Rule 12(c), "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc., 404 F.3d 1297, 1303 (11th Cir. 2005).

Plaintiff's Motion for Partial Judgment on the Pleadings [36] and Defendant's Motion for Judgment on the Pleadings [63] are rendered **MOOT** by the Court's above ruling allowing Defendant to amend its Answer.  The parties may accordingly rebrief and refile their motions based on the current pleadings.

## III.    Motion for Leave to Submit Supplemental Authority

Finally, Defendant's Motion for Leave to Submit Supplemental Authority [68] is **DENIED.**  After due consideration, the Court finds that the authority submitted in that motion does not change the outcome of this Order and as such does not require any additional briefing.

18

## <u>Conclusion</u>

In accordance with the foregoing, Defendant Beazley Insurance Company's Motion for Leave to Amend its Answer and Affirmative Defenses [43] is **GRANTED**.  Plaintiff SavaSeniorCare LLC's Rule 12(c) Motion for Judgment on the Pleadings [36] and Defendant Beazley Insurance Company's Motion for Judgment on the Pleadings [63] are **DENIED as moot**.  Defendant Zurich American Insurance Company's Request for Judicial Notice [46] is also **DENIED as moot**.  Defendant's Motion for Leave to Submit Supplemental Authority [68] is **DENIED.**

**SO ORDERED**, this 24th day of August, 2015.

_____
**RICHARD W. STORY**
United States District Judge

19