# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **SAVA SENIOR CARE, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ZURICH AMERICAN INSURANCE** | § | **Case No. 1:14-cv-2738** |
| **COMPANY and BEAZLEY** | § | |
| **INSURANCE COMPANY, INC.** | § | |
| **Defendants.** | § | |

---

## BEAZLEY INSURANCE COMPANY'S AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant Beazley Insurance Company, Inc. ("Beazley") files this Amended Answer, Affirmative Defenses and Counterclaim in response to the Amended Complaint filed by Plaintiff Sava Senior Care LLC ("Sava"):

## I.    ANSWER

1.    Beazley admits that Plaintiff filed this Lawsuit and that Sava, Leonard Grunstein, and Murray Forman are defendants in *Schron v. Grunstein*, No. 650702/2010 (N.Y. Sup. Ct.) ("the Schron Action"). Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding Sava's defense of itself or any defense of Grunstein and Forman. Except as expressly admitted, Beazley denies the remaining allegations in Paragraph 1.

2.      Beazley admits that it is an insurance company that issued Excess Insurance Policy No. V15QJX090201 (the "Beazley Policy"), which provides $10 million in coverage excess of the Private Company Directors, Officers and Employee Liability Policy, Policy No. DOC 5946117 01 (the "Zurich Policy"), issued by Zurich American Insurance Company.  To the extent that the allegations in Paragraph 2 purport to summarize the Zurich Policy, the Zurich Policy is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  The remaining allegations in Paragraph 2 are legal conclusions regarding the Zurich Policy's requirements, to which no response is necessary.  To the extent any response is required to the legal conclusions, Beazley denies the allegations.  Except as expressly admitted, Beazley denies the allegations in Paragraph 2.

3.      Beazley admits that the complaint in the Schron Action (the "Underlying Complaint") makes allegations against Grunstein, Forman, and Sava. The Underlying Complaint is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Allegations regarding what the Zurich Policy or Beazley Policy require are legal conclusions, to which no response is necessary.  Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding Sava's defense of

itself or any defense of Grunstein and Forman.  The Operating Agreement is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 3.

4.     Beazley admits that Zurich agreed to reimburse Sava, exclusively, for its defense costs, subject to a full reservation of rights.  Beazley lacks information sufficient to form a belief regarding how much of those costs were reimbursed by Zurich or the reasons for any alleged withholding.  Except as expressly admitted, Beazley denies the allegations in Paragraph 4.

5.     Beazley admits that Zurich denied coverage for Grunstein and Forman's defense costs in the Schron Action.  Zurich's denial is in a letter that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Beazley admits that it adopted Zurich's coverage position.  Beazley's coverage position was sent in a letter, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 5.

6.     Beazley denies the allegations in Paragraph 6.

7.     Beazley lacks sufficient information on which to form a belief regarding whether Sava indemnified Grunstein or Forman or the basis for any such indemnification.  The statement made in Paragraph 7 was made in a letter from Zurich to Sava, dated September 29, 2010, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 7.

8.     Paragraph 8 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 8.

9.     Beazley denies the allegations in Paragraph 9.

## THE PARTIES

10.     Beazley admits that Sava is a limited liability company organized under the laws of Delaware. Beazley lacks information sufficient to form a belief regarding Sava's relative size to other skilled nursing facility service providers in the United States.  Except as expressly admitted, Beazley denies the allegations in Paragraph 10.

11.     Beazley lacks information sufficient to form a belief regarding the truth of the allegations in Paragraph 11.

12.     The allegations in paragraph 12 are not directed at Beazley and, therefore, no response is required.  To the extent a response is required, Beazley admits Zurich is a corporation engaged in the business of issuing insurance contracts, but lacks information sufficient to form a belief as to the truth of the allegations regarding its place of incorporation or its principal place of business. Except as expressly admitted, Beazley denies the allegations in Paragraph 12.

13.     Beazley admits the allegations in Paragraph 13.

## JURISDICTION AND VENUE

14.     Beazley admits Sava and Defendants are citizens of different states and Sava has alleged more than $75,000 in damages. Except as expressly admitted, Beazley denies the allegations in Paragraph 14.

15.     Beazley admits this Court has personal jurisdiction over Beazley. Beazley lacks information sufficient to form a belief as to the truth of the allegations regarding jurisdiction over Zurich.  Except as expressly admitted, Beazley denies the allegations in Paragraph 15.

16.     Beazley admits venue is proper in this Court.  Except as expressly admitted, Beazley denies the allegations in Paragraph 16.

## FACTUAL ALLEGATIONS

17.     Beazley incorporates by reference, as if fully set forth herein, Paragraph 1 – 16 above.

## The Insurance Policies

18.     Beazley admits the allegations in Paragraph 18.

19.     Beazley admits Zurich issued the Zurich Policy to Sava as the Named Insured.  Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding where the Zurich Policy was delivered.  Except as expressly admitted, Zurich denies the allegations in Paragraph 19.

20.     Paragraph 20 purports to summarize the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

21.     Paragraph 21 purports to summarize the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

22.     Paragraph 22 purports to summarize the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

23.     Paragraph 23 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

24.     Paragraph 24 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

25.     Paragraph 25 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

26.     Paragraph 26 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

27.     Paragraph 27 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

28.     Paragraph 28 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

29.     Paragraph 29 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

30.     Paragraph 30 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Beazley denies the allegation that certain exclusions in the Zurich Policy do not apply.

31.     Paragraph 31 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

32.     Paragraph 32 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

33.     Paragraph 33 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

34.     Paragraph 34 purports to summarize and quote select portions of the Zurich Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

35.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding whether Sava paid the premiums necessary to purchase the Zurich Policy.  Except as expressly admitted, Beazley denies the allegations in Paragraph 35.

36.    Beazley admits the allegations in Paragraph 36.  The Beazley Policy is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

37.    Beazley admits it issued the Beazley Policy to Sava as the Named Insured.  Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding where the Beazley Policy was delivered to Sava. Except as expressly admitted, Beazley denies the allegations in Paragraph 37.

38.    Beazley admits the Beazley Policy is an excess insurance policy that insures Sava in the event that the Zurich Policy's underlying $15 million limits are exhausted.  The remaining allegations in Paragraph 38 purport to summarize select portions of the Beazley Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

39.     Paragraph 39 purports to summarize select portions of the Beazley Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

40.     Paragraph 40 purports to summarize and quote select portions of the Beazley Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

41.     Paragraph 41 purports to summarize and quote select portions of the Beazley Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

42.     Paragraph 42 purports to summarize and quote select portions of the Beazley Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

43.     Paragraph 43 purports to summarize select portions of the Beazley Policy, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

44.     Beazley admits that Sava paid premiums to purchase the Beazley Policy.  Except as expressly admitted, Beazley denies the allegations in Paragraph 44.

## The Underlying Litigation

45.     Beazley admits that the Schron Plaintiffs filed the Schron Action on June 23, 2010, and that the Schron Plaintiffs subsequently filed an Amended Verified Complaint (the "Schron Complaint").  The Schron Complaint is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 45.

46.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding whether Grunstein and Forman are former directors of Sava.  The remaining allegations in Paragraph 46 purport to summarize and quote select portions of the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

47.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 47.

48.     The first sentence of Paragraph 48 purports to summarize select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that

document.  Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in the second sentence of Paragraph 48.

49.     Paragraph 49 purports to summarize select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

50.     Beazley admits the Schron Plaintiffs make allegations against Grunstein and Forman, but denies that those allegations are made against them in their roles as directors and managers of Sava.  Paragraph 50 purports to summarize select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 50.

51.     Paragraph 51 purports to summarize select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

52.     Paragraph 52 purports to summarize select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

53.     Paragraph 53 purports to summarize and quote select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

54.     Beazley admits the Schron Plaintiffs sought a preliminary injunction. The remaining allegations in paragraph 54 purport to summarize and quote select portions of the memorandum of law in support of the Schron Plaintiffs' motion for a preliminary injunction, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document. Except as expressly admitted, Beazley denies the allegations in Paragraph 54.

55.     Paragraph 55 purports to quote select portions of an affidavit submitted in support of the Schron Plaintiffs' motion for a preliminary injunction, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

56.     Paragraph 56 purports to summarize select allegations in the Schron Complaint, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Beazley specifically denies that the allegations against Grunstein and Forman in the Schron Action relate to their actions as directors and/or managers of Sava.  Except as expressly admitted, Beazley denies the allegations in Paragraph 56.

### **The Defense of the Underlying Schron Action**

57.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 57.

58.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations Paragraph 58.  The second sentence purports to summarize and quote select portions of the Limited Liability Company Agreement (the "Operating Agreement"), which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

59.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 59.  Beazley states any contracts or other agreements referenced in Paragraph 59 are documents that speak for themselves, and Beazley denies any allegations or characterizations inconsistent with those documents.

60.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 60.

61.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 61.

62.     Beazley admits the court entered an order in the Schron Action on July 28, 2011, as alleged in Paragraph 62.  The second through fifth sentences of Paragraph 62 purport to summarize and quote select portions of the order, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 62.

63.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations relating to DLA Piper and Zuckerman Spaeder.  Beazley denies the remaining allegations in Paragraph 63.

64.     Beazley denies the allegations in Paragraph 64.

**The Insurers' [Alleged] Failure to Honor Their Policy Obligations**

65.     Beazley admits that it received notice of the Schron Action on June 29, 2010.  Except as expressly admitted, Beazley denies the allegations in Paragraph 65.

66.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding when Zurich acknowledged receipt of Sava's claim.  Beazley admits that Zurich sent a letter to Sava on September 29, 2010, which is a document that speaks for itself.  Except as expressly admitted, Beazley denies the allegations in Paragraph 66.

67.     Paragraph 67 purports to summarize select portions of Zurich's September 29, 2010 letter, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

68.     Paragraph 68 purports to summarize and quote select portions of Zurich's September 29, 2010 letter, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding when Zurich first communicated its coverage determination.  Except as expressly admitted, Beazley denies the allegations in Paragraph 68.

69.     Beazley admits that it acknowledged receipt of Sava's claim in a letter to Sava dated July 14, 2010 and that it sent letters to Sava on November 12, 2010 and November 16, 2011.  The July 14, 2010 letter, the November 12, 2010 letter, and the November 16, 2011 letter are documents that speak for themselves, and Beazley denies any allegations or characterizations inconsistent with those documents.  Except as expressly admitted, Beazley denies the allegations in Paragraph 69.

70.     Beazley admits that Zurich sent a letter to Sava on October 7, 2011. The remaining allegations in Paragraph 70 purport to summarize and quote select

portions of the October 7, 2011 letter, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 70.

71.    Paragraph 71 purports to summarize and quote select portions of the October 7, 2011 letter, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.

72.    Beazley admits that it sent a letter to Sava on November 16, 2011. The allegations in Paragraph 72 purport to summarize and quote select portions of the November 16, 2011 letter, which is a document that speaks for itself, and Beazley denies any allegations or characterizations inconsistent with that document.  Except as expressly admitted, Beazley denies the allegations in Paragraph 72.

73.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 73.

74.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 74.

75.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 75.

76.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 76.

77.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 77.

78.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 78.

79.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 79.

80.     Beazley denies the allegations in Paragraph 80.

## **Count I, Breach of Contract**

### **(Defense Costs for Sava)**

81.     Beazley incorporates by reference, as if fully set forth herein, Paragraphs 1 – 80 above.

82.     Beazley admits the Policies are insurance contracts and that it received premiums for the Beazley Policy.  Except as expressly admitted, Beazley denies the allegations in Paragraph 82.

83.     Beazley denies the allegations in Paragraph 83.

84.     The allegations in Paragraph 84 are legal conclusions to which an answer is neither required nor appropriate.  To the extent an answer is necessary, Beazley denies the allegations in Paragraph 84.

85.     The allegations in Paragraph 85 are legal conclusions to which an answer is neither required nor appropriate.  To the extent an answer is necessary, Beazley denies the allegations in Paragraph 85.

86.     The allegations in Paragraph 86 are legal conclusions to which an answer is neither required nor appropriate.  To the extent an answer is necessary, Beazley denies the allegations in Paragraph 86.

87.     Beazley denies the allegations in Paragraph 87.

## Count II, Declaratory Judgment

### (Defense Costs for Sava)

88.     Beazley incorporates, as if fully set forth herein, paragraphs 1 – 87 above.

89.     Beazley admits the Policies are insurance contracts and that it received premiums for the Beazley Policy.  Except as expressly admitted, Beazley denies the allegations in Paragraph 89.

90.     Beazley denies the allegations in Paragraph 90.

91.     Beazley admits that Zurich accepted Sava's tender of Sava's defense of itself in the Schron Action, subject to a complete reservation of all rights under the Zurich Policy.  Except as expressly admitted, Beazley denies the allegations in Paragraph 91.

92.     Beazley admits that is has not denied coverage to Sava for any of its Defense Costs incurred defending itself in the Schron Action.  Beazley lacks information sufficient to form a belief regarding any allegations not directed at Beazley.  Except as expressly admitted, Beazley denies the allegations in Paragraph 92.

93.     Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations in Paragraph 93.

94.     The allegations in Paragraph 94 are legal conclusions to which an answer is neither required nor appropriate.  To the extent an answer is necessary, Beazley denies the allegations in Paragraph 94.

95.     Beazley admits an actual case or controversy exists between Sava and Beazley.  Except as expressly admitted, Beazley denies the allegations in Paragraph 95.

96.    Beazley admits that Sava seeks declaratory judgment.  Beazley denies Sava is entitled to the relief it seeks.  Except as expressly admitted, Beazley denies the allegations in Paragraph 96.

## Count III, Breach of Contract

### (Defense Costs for Grunstein and Forman)

97.    Beazley incorporates, as if fully set forth herein, paragraphs 1 – 96 above.

98.    Beazley admits the Policies are insurance contracts and that it received premiums for the Beazley Policy.  Except as expressly admitted, Beazley denies the allegations in Paragraph 97.

99.    Beazley denies the allegations in Paragraph 99.

100.    Beazley lacks sufficient information upon which to form a belief as to the truth of the allegations regarding whether Sava has paid for Grunstein's and Forman's costs of defending the Schron Action.  Except as expressly admitted, Beazley denies the allegations in Paragraph 100.

101.    The allegations in Paragraph 101 are legal conclusions to which an answer is neither required nor appropriate.  To the extent an answer is necessary, Beazley denies the allegations in Paragraph 101.

102.    Beazley denies the allegations in Paragraph 102.

103.    Beazley denies all other allegations not specifically admitted in Paragraph 1 through 102 above.

## **Prayer for Relief**

No responsive pleading is necessary to the prayer for relief.  To the extent a response is required, Beazley denies that Sava is entitled to the relief it seeks.

## **II.    AFFIRMATIVE DEFENSES**

Without assuming any burden or obligation other than that imposed by operation of law, Beazley asserts the following affirmative defenses.

104.    Sava's claims for relief against Beazley are barred, in whole or in part, because Sava has not exhausted the Zurich Policy.

105.    Sava's amended complaint fails to state a claim against Beazley upon which relief can be granted.

106.    Sava's claims for relief against Beazley are barred, in whole or in part, because Grunstein and Forman are not "Insured Persons" as defined by the Zurich Policy with respect to the Schron Action.

107.    Sava's claims for relief against Beazley are barred, in whole or in part, by Endorsement Number 6 to the Zurich Policy because the Schron Action is "based upon, aris[es] out of or [is] attributable to Wrongful Acts, including

Interrelated Wrongful Acts, committed, attempted or allegedly committed or attempted in whole or in part prior to 12/10/2004."

108.   Sava's claims for relief against Beazley are barred, in whole or in part, because Sava's alleged indemnification of Grunstein and Forman for their alleged Loss resulting from the Schron Action was not permitted or required by law.

109.   Sava's claims for relief against Beazley are barred, in whole or in part, because the amounts sought by Sava are not "Loss" as defined in the Zurich Policy.

110.   Sava's claims for relief against Beazley are barred, in whole or in part, because the Schron Action does not involve "Wrongful Acts," as that term is defined in the Zurich Policy.

111.   Sava's claims for relief against Beazley are barred, in whole or in part, because Exclusion IV.A.7 of the Zurich Policy excludes coverage "for Wrongful Acts by the Insured Person in any position or capacity in any organization other than the Company even if the Company directed or requested the Insured Person to serve in such other position or capacity, except to the extent such coverage is otherwise afforded by this policy."

112.   Sava's claims for relief against Beazley are barred, in whole or in part, because Exclusion IV.A.12 of the Zurich Policy excludes coverage for "any deliberately fraudulent act or omission or any purposeful violation of any statutes

or regulation by such Insureds if a judgment or other final adjudication adverse to the Insureds establishes such a deliberately fraudulent act or omission or purposeful violation."

113.   Sava's claims for relief against Beazley are barred, in whole or in part, by Endorsement Number 15 to the Zurich Policy to the extent the Zurich Policy is excess to other insurance for the Schron Action.

114.   Sava's claims for relief against Beazley are barred, in whole or in part, by Sava's failure to comply with the terms and conditions of the Zurich Policy.

115.   Sava's claims for relief against Beazley are barred, in whole or in part, by Zurich's waiver of coverage.

116.   Sava's claims for relief against Beazley are barred, in whole or in part, because Sava is estopped from recovering amounts sought under the Zurich Policy and the Beazley Policy.

117.   Sava's claims for relief against Beazley are barred, in whole or in part, by Section 8 of the Application for Private Company Directors, Officers and Employees Liability Coverage (the "Application") filled out by Sava and attached hereto as Exhibit A-1.  Section 8 of the Application, entitled "Prior Knowledge," states:

Please complete the following paragraph:

No person or entity proposed for coverage is aware of any fact or circumstance or any actual or alleged act, error or omission which he or she has reason to suppose might give rise to a future claim that would fall within the scope of the proposed coverage, except (if no exceptions, please state)

Application at 4.  Sava left this portion of the Application blank.  *See id.*  Section 8 further states, "[i]t is agreed that if such fact or circumstance or actual or alleged act, error or omission exists, *whether or not disclosed*, any claim arising therefrom is excluded from this proposed coverage."  *Id.* (emphasis added).  Sava had knowledge of the "fact[s] or circumstance[s] or actual or alleged act[s], error[s] or omission[s]" out of which the Schron Action arose at the time Sava filled out the Application and, therefore, coverage for the Schron Action is excluded by the plain language of Section 8.

118.  Sava's claims for relief against Beazley are barred, in whole or in part, by Section V.B of the Zurich Policy.  In relevant part, Section V.B of the Zurich Policy states, "[i]n granting coverage under this policy, the Underwriter has relied upon the declarations and representations in the written application for this policy. . . . All such declarations and representations are the basis of coverage under this policy and shall be considered as incorporated in and constituting part of this policy."  Section V.B of the Zurich Policy continues in relevant part:

The **Insureds** represent that all such declarations and representations are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Underwriter under this policy.  The **Insureds** agree that in the event that any such declarations and representations are untrue, this policy shall not afford any coverage with respect to any of the following **Insureds**:

1.      any **Insured Person** who knew the facts that were not truthfully disclosed in the application,

2.      the **Company**, under Insuring Clause B, to the extent it indemnifies any **Insured Person** referenced in (1) above . . . .

whether or not such **Insured Person** or **Executive Officer** knew that the application contained such untruthful disclosure.

Coverage for the Schron Action is therefore excluded by the terms of the Zurich

Policy because Sava and/or Grunstein and/or Forman failed to disclose their

knowledge of the "fact[s] or circumstance[s] or actual or alleged act[s], error[s] or

omission[s]" out of which the Schron Action arose at the time they filled out the

Application.

### III.   COUNTERCLAIM

### Nature of the Claim

119.   This is a counterclaim for rescission of Beazley Excess Insurance

Policy No. V15QJX090201 (the "Beazley Policy").

### Parties

120.   The counterclaimant is Beazley Insurance Company, Inc. ("Beazley").

121.   Beazley names Sava Senior Care, LLC ("Sava") as the counterclaim

defendant.

### Jurisdiction

122.   This Court has jurisdiction over this counterclaim because it arises out

of the transactions and occurrences that form the basis of Sava's Amended

Complaint against Beazley.

123.   This Court also has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 1332, 2201, and 2202, and venue is proper in this Court under 28 U.S.C. §

1391.

### Facts

124.   Beazley issued the Beazley Policy, which provides $10 million in

coverage excess of the Private Company Directors, Officers and Employee

Liability Policy, Policy No. DOC 5946117 01 (the "Zurich Policy"), issued by

Zurich American Insurance Company.  Unless otherwise stated in the Beazley

Policy, it follows form to the Zurich Policy.

125.   Sava is the named insured under the Beazley Policy and the Zurich

Policy (collectively, the "Policies").

126.   To obtain the Beazley Policy, Sava completed an application, attached

hereto as Exhibit A-1, in late 2009 (the "Application").

127.   Sava was subsequently named as a defendant in *Schron v. Grunstein*,

No. 650702/2010 (N.Y. Sup. Ct.) (the "Schron Action").  In the Schron Action,

Rubin Schron and various entities he controls (collectively, the "Schron Plaintiffs")

sued Sava; Leonard Grunstein; Murray Forman; Troutman Sanders; Canyon Sudar

Partners; SVCARE Holdings; Fundamental Long Term Care Holdings; THI of

Baltimore; National Senior Care; Mariner Health Care; three MetCap Entities;

Harry Grunstein; and Lawrence Levinson.  *See* Doc. 8-3.

128.   The Schron Action alleges numerous instances of wrongful conduct

including the IHS Transaction (Doc. 8-3 ¶¶ 71-100); the Mariner Transaction (*id.*

¶¶ 13-15, 101-46); the seizure of THI (*id.* ¶¶ 16, 147-54); the SMV/SWC

refinancing (*id.* ¶¶ 155 – 69); the "Bogus 'Legal Advice' on the Sava Master

Lease" (*id.* ¶¶ 17-19, 188-220); the "Bogus 'Legal Advice' on the Amended

SVCARE Option" (*id.* ¶¶ 20, 221-33); a breach of duty regarding the SVCARE

Loan (*id.* ¶¶ 21, 234-43); a breach of duty regarding the Formation deal (*id.* ¶¶ 22-23, 269-77); misappropriation of New Mexico leaseholds (*id.* ¶¶ 24, 278-90); the Mariner "Kickback" malpractice (*id.* ¶¶ 26, 170-87); and the "Troutman Sanders Overbilling Conspiracy" (*id.* ¶¶ 27, 244-60).

129.   Pursuant to a consent agreement executed by Grunstein and Forman, Sava agreed to indemnify Grunstein and Forman for the cost of defending the Schron Action (the "Grunstein and Forman Defense Costs") and sought coverage from Zurich and Beazley for both its costs defending itself (the "Sava Defense Costs") and the Grunstein and Forman Defense Costs.

130.   Zurich and Beazley agreed to pay the Sava Defense Costs, but refused to pay the Grunstein and Forman Defense Costs because the Schron Action did not allege "Wrongful Acts" against Grunstein and Forman as that term is defined in the Zurich Policy and because Exclusion 7 applied to any Loss they incurred in the Schron Action.

131.   Sava disagreed with Zurich and Beazley's coverage position and filed this lawsuit against them.  In the lawsuit, Sava contends that the Schron Action alleges Wrongful Acts against Grunstein and Forman in their capacity as directors and officers of Sava.

132.   Allegedly in 2009, Grunstein and Schron had a heated discussion concerning threatened litigation between the two. Doc. 8 ¶ 55. Schron testified that:

> In a conversation during 2009, Grunstein threatened that if I ever sought to initiate litigation against him concerning SVCARE and Sava, he not only would fight me in court, but he would ensure that by the time the litigation was over, Sava and its subsidiaries would be worthless.

Dkt. 8-5.  Thus, Grunstein knew in 2009 that there was a possibility that Schron would pursue litigation against Grunstein and/or Sava.

133.   Moreover, all or substantially all of the Schron Action's alleged instances of misconduct occurred before Sava submitted its application for coverage to Beazley and Zurich, and several were facts or circumstances that Grunstein, Forman, and/or Sava should have disclosed on the Application. For instance, the Schron Action alleges misconduct with respect to the "Sava Master Lease," under which a company that Schron owned leased properties to Sava.  In 2008, Schron allegedly tried to exercise his right under the lease to increase Sava's rent payments.  Grunstein, under the guise of providing objective legal advice, purportedly intentionally authored a "self-serving and mendacious" legal memorandum "designed to dissuade Schron" from doing so.  Doc. 8-3 ¶¶ 196, 188-205.

134.    Upon information and belief, Grunstein and/or Forman retained legal counsel to represent them with respect to the circumstances surrounding the dispute with the Schron Plaintiffs *before the Policy Period began*.

135.    Section 8 of the Application specifically asks whether any "person or entity proposed for coverage is aware of any fact or circumstance or any actual or alleged act, error or omission which he or she has reason to suppose might give rise to a future claim that would fall within the scope of the proposed coverage."  Ex. A-1 at 4.

136.    Sava disclosed nothing in its response to this question.  *Id.*

137.    Sava's omissions on the Application in response to Section 8 were material.  The purpose of the Application was to allow Beazley to assess the risk of insuring Sava.  Beazley would not have issued the Beazley Policy if it had known of the facts and circumstances Sava omitted from its application for insurance coverage.

138.    Section V.B "Representations and Severability" of the Zurich Policy states,

> In granting coverage under this policy, the Underwriter has relied upon the declarations and representations in the written application for this policy. . . . All such declarations and representations are the basis

31

of coverage under this policy and shall be considered as incorporated in and constituting part of this policy.

The **Insureds** represent that all such declarations and representations are true and shall be deemed material to the acceptance of the risk or the hazard assumed by the Underwriter under this policy. The **Insureds** agree that in the event that any such declarations and representations are untrue, this policy shall not afford any coverage with respect to any of the following **Insureds**:

1.  any **Insured Person** who knew the facts that were not truthfully disclosed in the application,

2.  the **Company**, under Insuring Clause B, to the extent it indemnifies any **Insured Person** referenced in (1) above, and

3.  the **Company**, under Insuring Clause C [and Insuring Clause D][1] (if granted), if any **Executive Officer** knew the facts that were not truthfully disclosed in the application,

whether or not such **Insured Person** or **Executive Officer** knew that the application contained such untruthful disclosure.[2]

139.   Each of the bold terms are defined in the Zurich Policy.  The

definition of "Insured Person" includes directors and officers of Sava. The

"Company" means Sava. And "Executive Officer" means Sava's "chairperson,

president, chief financial officer, treasurer, in-house general counsel, any vice-

---

[1] "Insuring Clause D" was added to this provision by Endorsement 5 to the Policy.

[2] Although Endorsement 3 to the Policy modifies the Representations and Severability clauses, Beazley expressly does not follow form of Endorsement 3. Beazley Policy, Doc. 8-2 at 8.

president, or any other individual employed by the **Company** with similar

management duties."

140.   Upon information and belief, Grunstein and Forman fall within the

definition of "Executive Officer."

141.   Beazley has offered to return the premium Sava paid for the Beazley

Policy.

### Counterclaim for Rescission

142.   Beazley incorporates by reference paragraphs 119-41 above.

143.   The Application failed to disclose material facts and circumstances,

including Schron's intent to sue Grunstein and Sava.

144.   Sava made a false statement on the Application when it

misrepresented, by failing to disclose anything, that it had no knowledge of "any

fact[s] or circumstance[s] or any actual or alleged act[s], error[s] or omission[s]"

that "might give rise to a future claim that would fall within the scope" of the

Zurich Policy.

145.   Sava's false statement on the Application was material in that it

changed the nature, extent or character of the risk Beazley agreed to insure Sava

for.  Indeed, Sava expressly agreed that the representations in the Application are

material to Beazley's acceptance of the risk.  Beazley would not have issued the

Beazley Policy to Sava if Beazley had known of the facts and circumstances Sava omitted from its application for insurance coverage.

146.   These misrepresentations and omissions made in connection with the Application render the Beazley Policy void ab initio.

147.   To date, Beazley has made no payments under the Beazley Policy.

148.   Beazley is ready and willing to return any premiums received from Sava for the Beazley Policy.  Beazley has offered to return the premium it received for the Beazley Policy.

149.   For the foregoing reasons, Beazley seeks an order from this Court rescinding the Beazley Policy and declaring that Beazley owes no obligations under the Beazley Policy.

## PRAYER

WHEREFORE, Beazley respectfully requests that the Court enter an Order including or directing the following relief:

(A)   Rescinding the Beazley Policy and rendering it void ab initio;

(B)   Declaring that Beazley owes no obligations under the Beazley Policy;

(C)   Awarding Beazley the costs and expenses (including attorney's fees) that it has incurred in this action; and

(D)   For such other relief the Court deems proper, just and equitable.

34

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Beazley hereby

demands that all claims in this action be tried to a jury.

Dated:  February 5, 2015

AKIN GUMP STRAUSS HAUER &
FELD LLP


By: /s/ Daniel McNeel Lane, Jr.
Daniel McNeel Lane, Jr. (*Pro Hac Vice*)
Texas Bar No. 00784441
Matthew E. Pepping (*Pro Hac Vice*)
Texas Bar No. 24065894
Clayton N. Matheson (*Pro Hac Vice*)
Texas Bar No. 24074664
300 Convent Street, Suite 1600
San Antonio, Texas  78205
Telephone:  (210) 281-7000
Facsimile:  (210) 224-2035
nlane@akingump.com
mpepping@akingump.com
cmatheson@akingump.com

    and

Michael Singleton Reeves
Georgia Bar No. 598375
Benjamin McCulloh Byrd
Georgia Bar No. 141216
FRIEND HUDAK & HARRIS, LLP

35

Three Ravinia Drive, Suite 1700
Atlanta, GA 30346
Telephone: 770-399-9500
Facsimile: 770-395-0000
bbyrd@fh2.com
mreeves@fh2.com

ATTORNEYS FOR DEFENDANT
BEAZLEY INSURANCE COMPANY,
INC.

# Exhibit A-1

# Application For Private Company Directors, Officers And Employees Liability Coverage

**Privately Owned Company**



Zurich American Insurance Group

**PLEASE NOTE:**

- **This Application is for PRIVATELY HELD Companies only.**

- **Directors and Officers Liability and Reimbursement Insurance and Employment Practices Liability Insurance are written on a claims-made basis and cover only Claims first made against the Insureds during the Policy Period or the Extended Reporting Period, if exercised. The Limit of Liability available to pay judgments or settlements shall be reduced by amounts incurred as Defense Costs.**

- **This application and all exhibits attached shall form a part of this proposal and shall be held in strictest confidence.**

The following material must be attached to this application:

1. The most recent fiscal year-end financial statements of the Parent Company

2. The Parent Company's indemnification provision or by-laws.

3. The most recent EEO-1 report.

**Please indicate if any of the materials requested above are not attached to this application and the reason why.**

The following material must be attached to this application **only if applicable.**

1. The notice to stockholders and proxy statement for the most recent meeting of stockholders.

2. The latest annual report to stockholders.

3. Any Form 13D, 10-K, 10-Q, 8-K or S-1 filed with the Securities and Exchange Commission within the last 12 months.

4. Every prospectus for any securities offering completed in the last 12 months or currently planned or expected within one year.

5. A list of all subsidiaries proposed for coverage, including the following information: nature of business, name of owner(s), percent owned by each owner and the date created or acquired.

This application is submitted by:

Insurance Agency/Agent: _____

Address: _____

Please submit this completed proposal Application with all attachments to:

Zurich U.S. Specialties
Executive Assurance Department
One Liberty Plaza, 30th Floor
New York, New York 10006

**Please answer all of the following questions and indicate if a question is not applicable:**

1. GENERAL INFORMATION
   a) Name of Parent Company  Sava Senior Care, LLC
   b) Address  ONE RAVINIA DRIVE, STE 1500
      City/State/Zip  ATLANTA, GA 30346
   c) State of Incorporation  DE
   d) Date Established  2004
   e) Standard Industrial Code (SIC)  8051  long term care facilities
   f) Please provide a brief description of the operations of the Company:
      _____
      _____
      _____

2. OWNERSHIP
   a) Number of common equity ~~shares~~ units outstanding  10,000,000
   b) Number of common ~~equity~~ unit members ~~shareholders~~  1
   c) Percentage of common equity shares owned directly or beneficially by all officers and directors as a group  100 %
   d) Is there any shareholder(s) or group of affiliated shareholders (**including an employee stock ownership plan**) who own 10% or more of the common equity shares directly or beneficially ? [X]Yes   [   ]No, if yes, please complete the following (attach additional pages if necessary):

| Name of Shareholder | % Owned | Relation to the Parent Company |
|---|---|---|
| Leonard Grunstein | 62% | Beneficial Owner |
| Murray Forman | 38% | Beneficial owners |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

3. EMPLOYEES - Please provide current employee breakdown by state (top 9 states):

| State | Number of Employees | State | Number of Employees | State | Number of Employees |
|---|---|---|---|---|---|
| TX | 6292 | MD | 2002 | AL | 833 |
| NC | 4049 | MI | 1468 | WI | 736 |
| CO | 3097 | CA | 1134 | GA | 613 |

4. ANNOUNCED CHANGES

    a) Has the Parent Company publicly disclosed that it now has under consideration any acquisition, tender offer, merger or divestiture ? [  ]Yes  [X]No, if yes, attach details.

    b) Has the Parent Company publicly disclosed or made any new public offering of securities pursuant to the Securities Act of 1933 or exempt from registration under Regulation A, within the last year ? [  ]Yes  [X]No, if yes, attach details including the prospectus.

    c) Has the Parent Company had within the last 3 years or do they anticipate within the next 2 years any facility closings, consolidations, layoffs or staff reductions which will (did) result in termination of more than 5% of the workforce at any one business location ? [X]Yes  [  ]No, If yes, how many employees will be (were) affected ? *SEe Littlejohn Opportunity Company, LLC change of ownership*

5. PAST ACTIVITIES

    A. Has the Parent Company, a subsidiary, a director or officer or other proposed Insured Person been involved in any of the following:

        a) Anti-trust, copyright, or patent litigation ? [  ]Yes  [X]No

        b) Civil or criminal action or administrative proceeding charging violation of a federal or state securities law or regulation ? [X]Yes  [  ]No  *DOJ Investigation*

        c) Any other criminal action ? [  ]Yes  [X]No

        d) Representative actions, class actions or derivative suits ? [X]Yes  [  ]No  *Has not yet been certified*

    If yes to any of these past activities, please attach details.

    B. Please indicate first dollar loss history (including defense costs) for employment related demands or judicial or administrative proceedings first made in each of the last three years:

| Year | Number of Claims | Defense Costs Paid | Damages / Settlement Costs Paid |
|------|------------------|--------------------|----------------------------------|
|      |                  |                    |                                  |
|      |                  |                    |                                  |
|      |                  |                    |                                  |

    On a separate piece of paper, please provide the following information for each such claim which has or is expected to exceed $25,000 in loss (including defense costs): 1) date of claim; 2) description of claim; 3) total amount paid (broken-out by defense costs, damages, and settlement); 4) whether the claim was (is) an administrative action or lawsuit.

    C. For the Last Three Years, what has been the:

| Year | Total Number of Employees | Number of Employees Turned over / Separated | Number of Employees Terminated |
|------|---------------------------|---------------------------------------------|--------------------------------|
|      |                           |                                             |                                |
|      |                           |                                             |                                |
|      |                           |                                             |                                |

6. EMPLOYMENT PRACTICES PROCEDURES

    A. Does the Parent Company have a Human Resources or Personnel Department ? [X]Yes  [  ]No, If no, who performs the human resource functions _____

    B. Does the Parent Company use an employment application for all employment applicants ? [X]Yes  [  ]No, If yes, please attach a copy.

    C. Does the Parent Company have an implemented anti-sexual harassment policy ? [X]Yes  [  ]No

    D. Does the Parent Company distribute an employment handbook to all employees ? [X]Yes  [  ]No, If yes, please attach a copy.

E. Does the Parent Company have a formal progressive discipline policy ? [X]Yes   [ ]No

F. Are any proposed Insureds currently required to comply with any judicial or administrative agreement, order, decree or judgment relating to employment ? [ ]Yes   [X]No, If yes, please attach a copy.

G. When an employee is discharged:

    a) Is officer approval required and are human resources personnel directly involved ? [X]Yes   [ ]No  *HR is, but an officer may not be.*

    b) Is an attorney consulted prior to discharging an employee ? [X]Yes   [ ]No  *when needed.*

7.  CONTINUITY WITH PRIOR COVERAGE

If the Parent Company has directors and officers liability coverage and employment practices liability coverage and is requesting continuity of coverage for an existing layer of coverage, please complete this Section and skip Section 8. If the Parent Company does not currently have directors and officers liability coverage and employment practices liability coverage, or this application is being submitted for a new excess limit of liability or the request for continuity of coverage for an existing layer has been declined, please skip this Section and complete Section 8.

Continuity date requested _____

Attach a copy of the prior application with which continuity of coverage is to be maintained. The Underwriter will be relying upon the declarations and representations contained in such prior application and those declarations and representations shall be considered to be incorporated in and form a part of the proposed policy.

8.  PRIOR KNOWLEDGE

Please complete the following paragraph:

No person or entity proposed for coverage is aware of any fact or circumstance or any actual or alleged act, error or omission which he or she has reason to suppose might give rise to a future claim that would fall within the scope of the proposed coverage, except (if no exceptions, please state) _____

_____

It is agreed that if such fact or circumstance or actual or alleged act, error or omission exists, whether or not disclosed, any claim arising therefrom is excluded from this proposed coverage.

9.  PRIOR INSURANCE

Does the Parent Company or any subsidiary currently have directors and officers liability coverage and / or employment practices liability insurance [ ]Yes   [ ]No

If no, answer the prior knowledge statement in Section 8. If yes, answer the following:

| | Directors and Officers Liability and Reimbursement Insurance | Employment Practices Liability Insurance |
|---|---|---|
| Insurer | | |
| Limit of Liability | | |
| Expiration Date | | |

Has any proposed Insured given written notice under the provisions of any prior or current directors and officers liability policy and / or employment practices liability policy of specific facts or circumstances which might give rise to a claim being made against any proposed Insureds ? _____ if yes, please attach details.

Have any loss payments been made on behalf of any proposed Insureds under any directors and officers liability policy , employment practices, or similar insurance policy ? _____ if yes, please attach details.

10. FALSE INFORMATION

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime in certain jurisdictions.

11. DECLARATION AND SIGNATURE

The undersigned declares that to the best of his or her knowledge and belief the statements set forth herein are true.  The signing of this application does not bind the Underwriter or the proposed Insureds to effect insurance.  The undersigned agrees that this application and its attachments shall be the basis of the contract should a policy be issued and shall be deemed attached to and shall form part of the policy.  The Underwriter is hereby authorized to make any investigation and inquiry in connection with this application that it deems necessary.

The undersigned, on behalf of all proposed Insureds, agrees that if the information in the declarations and representations contained in this application and its attachments materially changes between the date of this application and the inception of the proposed coverage, the undersigned will immediately report in writing to the Underwriter such change, and the Underwriter may withdraw or modify any outstanding quotations or agreements to bind coverage.  The undersigned acknowledges and agrees that the Underwriter's receipt of such written report, prior to inception of the proposed coverage, is a condition precedent to coverage.

**NEW YORK APPLICANTS: ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING, INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SHALL ALSO BE SUBJECT TO A CIVIL PENALTY NOT TO EXCEED FIVE THOUSAND DOLLARS AND THE STATED VALUE OF THE CLAIM FOR EACH SUCH VIOLATION.**

This application must be signed by the Chairman of the Board or President of the Parent Company.

Signature _____ Title _____ Date _____

**NEW YORK AND RHODE ISLAND APPLICANTS:  PLEASE READ THE FOLLOWING STATEMENT CAREFULLY AND SIGN BELOW WHERE INDICATED.  IF A POLICY IS ISSUED, NEW YORK AND RHODE ISLAND INSURANCE DEPARTMENT REGULATIONS REQUIRE THAT THIS SIGNED STATEMENT BE ATTACHED TO THE POLICY.**

**The insured hereby acknowledges that he/she/it is aware that the limit of liability contained in this policy shall be reduced, and may be completely exhausted, by the costs of legal defense and , in such event, the Insurer shall not be liable for the costs of legal defense or for the amount of any judgment or settlement to the extent that such exceeds the limit of liability of this policy.**

**The insured hereby further acknowledges that he/she/it is aware that legal defense costs that are incurred shall be applied against the retention amount.**

Must be signed by the Chairman of the Board or President of the Parent Company.

Signature _____ Title _____ Date _____